RICHARD L HOLCOMB (HI Bar No. 9177)
JUSTIN A. BRACKETT (HI Bar No. 9954)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite # 808
Honolulu, HI  96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@gmail.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Reed Sailola, | ) _____ |
| Plaintiff, | ) CASE NO. 1:13-cv-00544 HG-RLP |
| vs. | ) |
| Municipal Services Bureau, | ) FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF |
| and | ) |
| John Does (1-50), | ) |
| Defendants. | ) JURY TRIAL REQUESTED |

# FIRST AMENDED COMPLAINT

## INTRODUCTION

1.     This is an action for damages against the Defendant for violations of the Telephone Consumer Protection Act (hereinafter "TCPA"), 47 U.S.C. §§ 227 *et seq*. and for various violations of Hawai'i state law as set forth below.

## JURISDICTION

2.     Subject matter jurisdiction in this Court is proper pursuant to 47 U.S.C. §§ 227g(2), 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

3.     This action arises out of Defendant's repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq*. ("TCPA"), repeated violations of numerous provisions of Chapter 443B of the Hawaii Revised Statutes, the negligent conduct of Defendant, and from the invasions of Plaintiff's personal and financial privacy by Defendant and its agents in their illegal and libelous efforts to collect money that was not owed by Plaintiff, as well as Defendant's intentional inflication of emotional distress upon Plaintiff.

4.     Venue is proper in this District because the acts and transactions occurred here, Defendant transacts business here, and Plaintiff resides here.

1

## PARTIES

5.     Plaintiff, Reed Sailola (hereinafter referred to as "Plaintiff" and/or "Mr. Sailola"), is a resident of this State, District and Division who is authorized by law to bring this action.

6.     Defendant Municipal Services Bureau (hereinafter referred to as "Defendant") is a Texas for-profit corporation, with its principal office located in Austin, Texas, which regularly conducts business in the State of Hawai'i.

7.     Defendant may be served by personal service upon its registered agent, to wit:  Municipal Services Bureau, c/o The Corporation Company, Inc. 1136 Union Mall, Suite 301, Honolulu, HI  96813.

8.     Other Defendants may be discovered in the course of litigation, and Mr. Sailola respectfully prays that the Court will permit the addition of later discovered parties upon motion.

## FACTS

9.     Defendant is properly licensed as a collection agency in the State of Hawai'i.  **Exhibit One**.

10.    On or about January 23, 2013, Defendant entered into a contract with the Judiciary, State of Hawai'i.     **Exhibit Two**.  Pursuant to that contract, Defendant, using Defendant's name, collects and attempts to collect forms of

indebtedness on behalf of the Judiciary, specifically unpaid fines or penalties.  *See Id*.

11.     Pursuant to the contract, Defendant undertakes, and/or holds itself out as being able to undertake, collection efforts on behalf of the Judiciary for the State of Hawaii for claims or money due on accounts and/or other forms of indebtedness.  And, the Judiciary has agreed to compensate Defendant according to the following fee schedule:  21.21% add-on fee to be added to the amount due resulting in a 17.5% amount retained by Defendant as its payment.  **Exhibit Two**.

12.     The contract, as agreed upon by Defendant, specifically imposes a duty upon the Defendant to "comply with all federal, state, and county laws, ordinance, codes, rules and regulations . . . that in any way affect [Defendant's] performance of th[e] contract," including the Telephone Consumer Protection Act and Hawaii state law pertaining to stays of sentence(s).  **Exhibit Two** at ¶ 15.

13.     Pursuant to the contract, Defendant has further agreed to:

> defend, indemnify, and hold harmless [the] Judiciary and its officers, employees, and agenst from and against all liability, loss, damage, cost, and expense, including attorneys' fees, and all claims, suits, and demands arising out of or resulting from the acts or omissions of [Defendant] or [Defendant's] employees, officers, agents, or subcontractors under th[e] contract.

**Exhibit Two** at ¶ 14.  Defendant has also agreed to defend, indemnify and hold

3

harmless [the] Judiciary insofar as the claims arise from any patented article, process or appliance used in connection with the contract.  *Id*. at ¶ 21.

14.     Moreover, insofar as a dispute arises between the Judiciary and the Defendant, Defendant has agreed to the following:

> All disputes arising under this contract shall be resolved in the manner set forth in section 103D-703, HRS and chapter 126, HAR.   [Defendant] shall not sue Judiciary concerning any disputes arising under this contract until after Judiciary rejects Contractor's written request seeking informal resolution of the dispute, or until ninety (90) days after Judiciary's receipt of the written request, whichever comes first. . . .

**Exhibit Two** at ¶ 18.

15.     On December 6, 2012, Mr. Sailola was convicted of Operating a Vehicle Under the Influence of an Intoxicant ("OVUII") in violation of Section 291E-61(a)(3) in case number 1DTA-11-03671, and was sentenced pursuant to Section 291E-61(b)(1) (first offense) of the Hawai'i Revised Statutes.

16.     Following a first offense OVUII conviction, a fine is part of the sentence that may be imposed pursuant to Section 291E-61(b)(1)(C) of the Hawai'i Revised Statutes.

17.     A first offense OVUII conviction is a petty misdemeanor in Hawai'i. *Compare* Haw. Rev. Stat. § 291E-61(b)(1) *with* Haw. Rev. Stat. § 701-107(4); *State v. Bryan*, 124 Hawai'i 404, 412 245 P.3d 477, 485 (2010).

4

18.    While appeals are pending, Hawai'i law mandates the stay of execution of sentences in petty misdemeanonor cases.  Haw. Rev. Stat. §§ 641-14, 804-4(a), (b);  *State v. Kiese*, 126 Hawai'i 494, 273 P.3d 1180 (2012).

19.    Moreover, not only is the stay of the sentence mandated, but also the effect of the stay is statutorily defined as precluding the operation of any imposed sentence:

> No defendant entitled to bail, whether bailed or not, shall be subject, without the defendant's written consent, to the operation of any sentence passed upon the defendant, while any proceedings to procure a review of any action of the trial court or jury in the premises are pending and undetermined . . .

Haw. Rev. Stat. § 804-4.

20.    Accordingly, immediately after the sentence was imposed on December 6, 2013, the Honolulu District Court ordered, in response to Mr. Sailola's specific request, that it was "**Staying the entire sentence.**" Transcript of Proceedings, December 6, 2012, pp. 13-15 (Honorable David W. Lo, presiding) (attached hereto as **Exhibit Three**).

21.    Mr. Sailola timely filed his appeal on January 4, 2013 (*see* Haw. R. App. P., Rule 4(b) permitting 30 days to file a notice of appeal in criminal cases). That pending appeal is styled as *State v. Reed Sailola*, CAAP-13-0000002 (Mr. Sailola's pending appeal of Case No. 1DTA-11 -03671)).  And, on January 7,

2013, Mr. Sailola's requested stay was specifically and properly granted by the Honolulu District Court.  **Exhibit Four** at 1:52:52.[1]  The following occurred:

> MR. BURGE:  Jonathan Burge for Defendant.  This is for perfection of appeal judge.  We did one of those stip fact trials. I did file the appeal on Friday . . .
>
> THE COURT:  Okay.  Sentence is stayed.

**Exhibit Four** at 1:52:52 – 1:53:25.

22.     Yet again, and on June 6, 2013, Mr. Sailola's case was heard by the Honolulu District Court.  The Court again specifically, accurately, and correctly found:

> Recall Bench Warrant.  Clerk has brought it to my attention that an appeal has been noted, so sentence stayed on appeal.  Okay, continue to stay sentence on appeal.

**Exhibit Five** at 1:54:18 – 1:54:37.

23.     The stay of the sentence is plainly reflected in the Honolulu District Court's minutes.  **Exhibit Six**.

24.     The minutes are readily available to the public and can be viewed by searching Mr. Sailola's name and/or case on the Hawaii State Judiciary's eKokua website.

---

[1] Counsel has requested a transcript of the January 7 and June 6 proceedings. However, as of the drafting of this Amended Complaint, only the audio recording is available.

25.     Mr. Sailola's appeal of his case is still pending before the Intermediate Court of Appeals for Hawaii.   See *State v. Reed Sailola*, CAAP-13-0000002. **Exhibit Seven**. No decision has been entered to dispose of that appeal.   *State v. Reed Sailola*, CAAP-13-0000002.

26.     Accordingly, Mr. Sailola's sentence remains stayed and any financial obligation arising from that conviction is currently neither due nor owing.

27.     Consistent with its duty to comply with all applicable state and federal laws, Defendant had a duty to determine whether the financial obligation was actually owed before it commenced collection of it.

28.     Despite the stay and the statutorily mandated effect of the stay, Defendant claims that on July 3, 2013, Mr. Sailola's "account" was placed with Defendant "for collection."

29.     Defendant then attempted to collect from Mr. Sailola a $512.00 "Original Balance" and a $108.61 "AddOn."   **Exhibit Seven**, "Consumer Fact Sheet" generated by Defendant.

30.     Defendant knew, or should have known, that the financial obligation was not owed at the time it commenced collection efforts.

31.     Defendant did not review the minutes, dispositions, recordings, or transcripts from Mr. Sailola's OVUII case before attempting to collect $620.61

from Mr. Sailola.

32.    Defendant uses mail in its business.

33.    Defendant makes telephone calls in the course of its business.

34.    The primary purpose of Defendant's business is the collection of claims or financial obligations due on accounts, and/or other forms of indebtedness.

35.    Defendant regularly collects or attempts to collect money owed, or due, or asserted to be owed or due to another.

36.    At all times relevant to this complaint, the Plaintiff was and is a "person" as defined by the TCPA 47 U.S.C. § 153(32).

37.    Upon information and belief, the Defendant has owned, operated, and or controlled "customer premises equipment" as defined by the TCPA 47 U.S.C. § 153(14) that originated, routed, and/or terminated telecommunications.

38.    Defendant, at all times relevant to the complaint herein, engages in "telecommunications" defined by the TCPA 47 U.S.C. § 153(43).

39.    Defendant engages in "interstate communications" defined by the TCPA 47 U.S.C. § 153(22).

40.     Defendant has used, controlled, and/or operated "wire communications" as defined by the TCPA 47 U.S.C. § 153(52), that existed as instrumentalities of interstate and intrastate commerce.

41.     At all times relevant to this complaint, the Defendant has used, controlled, and/or operated an "automatic telephone dialing system" as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200(f)(2).

42.     At all times relevant to this complaint, the Defendant has used, controlled, and/or operated an "artificial or prerecorded voice" system as contemplated by the TCPA, *see* 47 U.S.C. § 227(b)(1)(A) and 47 C.F.R. § 64.1200(a)(1).

### *July 5, 2013 Collection Letter from Defendant*

43.     Defendant sent Mr. Sailola a collection letter dated July 5, 2013, collecting on the above referenced court fees and/or fines. **Exhibit Seven**.

44.     The July 5, 2013 collection letter was the first written correspondence received by Mr. Sailola from Defendant.

45.     The July 5, 2013 collection letter from Defendant demanded the amount of $620.61 as of July 5, 2013. **Exhibit Seven**.

46.     The July 5, 2013 collection letter was sent in connection with Defendant's attempt to collect money that was not owed at that time, and may

never become a collectible financial obligation.

47.    The July 5, 2013 collection letter never asserts that Defendant is a debt collector, nor does it contain any of the required disclosures pursuant to Chapter 443B of the Hawai'i Revised Statutes.

48.    The July 5, 2013 collection letter was correctly addressed to Mr. Sailola.

49.    The July 5, 2013 collection letter falsely asserts: "A judgment has been entered against you in favor of the State of Hawai'i.  The time for appeal has expired and the judgment is final." **Exhibit Seven**.

50.    These representations were made despite the fact that Mr. Sailola had appealed the judgment.  *See State v. Reed Sailola*, CAAP-13-0000002.

51.    Moreover, these representations were made despite the fact that the execution of the judgment had been stayed pending the appeal. *Id.*

52.    The July 5, 2013 letter went on to assert:  "a hold has been placed upon the renewal of your driver's license and/or motor vehicle registration." **Exhibit Seven**.

53.    In what appears to be a guesture to explain Mr. Sailola's rights, the July 5, 2013 letter asserts: "*We are required under state law to notify consumers of the following rights.  This list does not contain a complete list of the rights*

*consumers have under state and federal law*." **Exhibit Seven**.

54.     Despite this preliminary disclosure, Defendant's July 5, 2013 collection letter either negligently, or perhaps intentionally, does not include the recitation of any consumer rights whatsoever.

55.     The July 5, 2013 letter has a provision in small print which reads:

> NOTICE: If you pay by credit card, where allowed by state law, a convenience fee will be added to the total amount. Convenience fees are: $10 for payments up to $499.99; $15 for payments of $500 to $749.99; and $20 for payments of $750.00 and greater.  The fee will be automatically added at the time the credit card transaction is processed….

**Exhibit Seven**.

56.     Most egregiously, Defendant's letter seeks to have Mr. Sailola agree to a guilty plea in his pending criminal case by asserting the following:

> BY SUBMITTING MY PAYMENT, I UNDERSTAND THAT I AM SUBMITTING A PLEA OF NO CONTEST TO THE CHARGES AGAINST ME WITH REGARDS TO THIS CASE.   I WAIVE MY RIGHT TO A JURY AND TO APPEAL. . . .

**Exhibit Seven**.

57.     Thus, even if Defendant and/or the Hawai'i District Court were entitled to payment, which they currently are not, Mr. Sailola could not even pay the debt without agreeing to waive the rights of which he specifically availed

11

himself with the assistance of his attorney, *i.e.*, the right to plead "not guilty," to require the State to meet its burden of proof in convicting Mr. Sailola, and to appeal said conviction.

### *Collection Calls*

58.   Defendant has also communicated with Mr. Sailola on numerous occasions in a fashion that violates multiple provisions of the TCPA as well as Hawaii's statutes.

59.   For many weeks, Defendant, and the collectors employed by Defendant, repeatedly and willfully contacted Plaintiff on his cellular telephone number in an effort to collect this debt.  These calls were "communication[s]" in an attempt to collect a debt as is defined by Section 443B-1 of the Hawaii Revised Statutes.

60.   Defendant's representatives have harassed and continue to harass Mr. Sailola by making continuous automated and direct telephone calls to his cellular telephone in an attempt to collect a financial obligation that simply was not owed.

61.   Mr. Sailola has electronically saved many of the artificial pre-recorded voice messages as Defendant caused such messages to be left on Mr. Sailola's cellular telephone's voicemail.

62.    Mr. Sailola never provided "prior express consent" to either Defendant or the Hawaii State Judiciary which would allow either to call Mr. Sailola's cellular telephone using an automated dialing system.

63.    Mr. Sailola never provided "prior express consent" to either Defendant or the Hawaii State Judiciary which would allow either to leave artificial pre-recorded messages on his cellular telephone's voicemail.

64.    Mr. Sailola disputes ever providing his cellular telephone number to the State of Hawaii, law enforcement officials, the courts for Hawaii, or Defendant.

65.    Moreover, insofar as Mr. Sailola may have provided his cellular telephone number, any consent that could be deemed to allow Defendant to call Mr. Sailola was revoked when:  Mr. Sailola specifically sought and was granted a stay in the execution of his sentence and/or during the telephone conversation on or about July 16, 2013 between Mr. Sailola and MSB as discussed below.

66.    Defendant used "skip tracing" to obtain Mr. Sailola's cellular telephone number.

67.    Defendant's collection call logs even specifically assert that "Skip Tracing" was used to obtain Mr. Sailola's cellular telephone number on July 8, 2013. **See Exhibit Eight**.

## *Collection Calls to Mr. Sailola's Cellular Telephone*

68.    On Tuesday, July 2, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

69.    On Wednesday, July 3, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

70.    On Friday, July 5, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

71.    On Saturday, July 6, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

72.    On Monday, July 8, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.  This call was received by Mr. Sailola at 5:58 A.M.

73.    On July 8, 2013, following Mr. Sailola's attempt to call Defendant, Defendant, via its automatic telephone dialing system, again made a telephone call

14

and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.  This call was made at or around 9:01:48 p.m.

74.     On Saturday, July 13, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

75.     On Monday, July 15, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

76.     On Tuesday, July 16, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

77.     On Wednesday, July 17, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

78.     On Thursday, July 18, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

79.     On Friday, July 19, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an

15

attempt to collect the money.

80.     On Monday, July 22, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

81.     On Tuesday, July 23, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

82.     On Wednesday, July 24, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

83.     On Thursday, July 25, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

84.     On Friday, July 26, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

85.     On Monday, July 29, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

86.     On Tuesday, July 30, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

87.     On Thursday, August 1, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

88.     On Saturday, August 3, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

89.     On Monday, August 5, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

90.     On Tuesday, August 6, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

91.     On Wednesday, August 7, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

92.     On Thursday, August 8, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

93.     On Friday, August 9, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

94.     On Monday, August 12, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

95.     On Tuesday, August 13, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

96.     On Wednesday, August 14, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

97.     On Thursday, August 15, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

98.   On Wednesday, August 21, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

99.   On Thursday, August 22, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

100.   On Monday, August 26, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

101.   On Wednesday, August 28, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

102.   On Friday, August 30, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

103.   On Saturday, August 31, 2013, Defendant, via its automatic telephone dialing system, made a telephone call and left a voice message on Mr. Sailola's cellular telephone in an attempt to collect the money.

104.   On Wednesday, September 4, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

105.   On Thursday, September 5, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

106.   On Friday, September 6, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

107.   On Monday, September 9, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

108.   On Thursday, September 12, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

109.   On Friday, September 13, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

110.   On Wednesday, September 18, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

111.   On Thursday, September 19, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

112.   On Friday, September 20, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

113.   On Wednesday, September 25, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

114.   On Thursday, September 26, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

115.   On Friday, September 27, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

116.   On Saturday, September 28, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

117.   On Monday, September 30, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

118.   On Thursday, October 3, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

119.   On Friday, October 4, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

120.   On Monday, October 7, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

121.   On Tuesday, October 8, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

122. On Wednesday, October 9, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

123. On Monday, October 14, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

124. On Tuesday, October 22, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

125. On Thursday, October 24, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

126. On Friday, October 25, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

127. On Saturday, November 2, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

128.   There were at least sixty-six (66) phone calls made by Defendant to Mr. Sailola.

129.   Of the sixty-six phone calls, at least fifty-six (56) of them were made by Defendant to Mr. Sailola's cellular telephone using Defendant's automatic telephone dialing system and/or an artificial or pre-recorded voice system.

130.   Defendants have already admitted to making "approximately forty-seven (47) communication attempts to Plaintiff between July 3, 2013 and November 2, 2013." **See Exhibit Nine.**

131.   Many of these calls resulted in Defendant's automatic telephone dialing system leaving identical voicemails for Mr. Sailola on his cellular voicemail account.

132.   In the messages Defendant failed to identify its name as Municipal Services Bureau.

133.   In each of Defendant's prerecorded messages, Defendant never discloses the caller's identity.

134.    In each of the messages Defendant's representative never assert that Defendant is a debt collector.

135.    In each of the above referenced messages Defendant only asserts that it can be reached at "1-800-295-2851."

136.   Mr. Sailola is informed, and therefore asserts, that the telephone number 1-800-295-2851 is a telephone number of Defendant, or was an active telephone number for Defendant during the time period in question.

### *July 16, 2013 Teleconference*

137.   On or about Tuesday, July 16, 2013, Defendant, via its automatic telephone dialing system, made a telephone call to Mr. Sailola's cellular telephone in an attempt to collect the money.

138.   Defendant's representative, spoke with Mr. Sailola on July 16, 2013.

139.   During this call, Defendant's representative explained that he worked for the Defendant, Municipal Services Bureau.

140.   During this call, Mr. Sailola disputed that he owed any money to Defendant by explaining that he was currently appealing the charges that were levied against him.

141.   During this call, Defendant's representative was not able to verify the basis of any debt.

142.   During this call, Mr. Sailola explained that he was represented by an attorney.

143.   In spite of Mr. Sailola's dispute and notification of having legal representation, Defendant's representative continued to demand immediate

payment.

144.   All calls made by Defendant to Mr. Sailola's cellular telephone before July 16, 2013 were calls intentionally made to Mr. Sailola's cellular telephone with full knowledge that there was no express consent, and thus these calls were willful or knowing violations of the Telephone Consumer Protection Act.

145.   All calls made by Defendant to Mr. Sailola's cellular telephone after July 16, 2013 were calls intentionally made to Mr. Sailola's cellular telephone with full knowledge that there was no express consent, and thus these calls were willful or knowing violations of the Telephone Consumer Protection Act.

<u>*September 5, 2013 Collection Letter from Defendant*</u>

146.   Defendant sent Mr. Sailola a second collection letter dated September 5, 2013, collecting on the same court fees and/or fines referenced above.   **Exhibit Eight**.

147.   The September 5, 2013 collection letter from Defendant demanded the amount of $620.61 as of September 5, 2013. **Exhibit Eight**.

148.   The September 5, 2013 collection letter was sent in connection with Defendant's attempt to collect money that was not then owed.

149.   The September 5, 2013 collection letter never asserts that Defendant is a debt collector, nor does it contain any of the required disclosures pursuant to

26

the Hawai'i Revised Statutes.

150.   The September 5, 2013 collection letter was correctly addressed to Mr. Sailola.

151.   Despite Mr. Sailola's full compliance with all relevant court orders, terms, and conditions, the September 5, 2013 collection letter falsely asserts: "**YOU HAVE NOT COMPLIED WITH THE TERMS AND CONDITIONS OF YOUR OUTSTANDING COURT MATTER**." **Exhibit Eight**.

152.   The September 5, 2013 collection letter falsely asserts: "A judgment has been entered against you in favor of the State of Hawaii.  You were provided, by the Court, notice of this judgment, **but you failed to respond or resolve the outstanding matter**." **Exhibit Eight** (emphasis added).

153.   As previously explained, these representations were made despite the fact that Mr. Sailola had appealed the judgment, had the execution of the sentence stayed, and even after Mr. Sailola had specifically told a MSB representative that he had a lawyer and had appealed. *See State of Hawaii v. Reed Sailola*, CAAP-13-0000002.

154.   As explained above, these representations were made despite the fact that the execution of the judgment had been stayed pending that appeal. *See State of Hawaii v. Reed W. Sailola*, 1DTA-11-03671.

27

155.   The September 5, 2013 letter went on to assert: "a hold has been placed upon the renewal of your driver's license and/or motor vehicle registration." (see Exhibit D).

156.   In what appears to be a guesture to explain Mr. Sailola's rights, the September 5, 2013 letter asserts: "*We are required under state law to notify consumers of the following rights.  This list does not contain a complete list of the rights consumers have under state and federal law.*"  **Exhibit Eight** (emphasis in original).

157.   Despite this disclosure, Defendant's September 5, 2013 collection letter also does not include the recitation of any consumer rights whatsoever.

158.   The September 5, 2013 letter has a provision in small print which reads:

> NOTICE: If you pay by credit card, where allowed by state law, a convenience fee will be added to the total amount.  Convenience fees are: $10 for payments up to $499.99; $15 for payments of $500 to $749.99; and $20 for payments of $750.00 and greater.  The fee will be automatically added at the time the credit card transaction is processed….

**Exhibit Eight**.

159.   Most egregiously, Defendant's September 5, 2013 letter again seeks to have Mr. Sailola agree to a guilty plea in his pending criminal case by asserting

28

the following:

> BY SUBMITTING MY PAYMENT, I UNDERSTAND THAT I AM SUBMITTING A PLEA OF NO CONTEST TO THE CHARGES AGAINST ME WITH REGARDS TO THIS CASE.   I WAIVE MY RIGHT TO A JURY AND TO APPEAL. . . .

**Exhibit Eight**.

160.   Thus, even if Defendant and/or the Hawai'i District Court were entitled to payment, which they are not, Mr. Sailola could not even pay the debt without agreeing to waive the rights which he specifically availed himself of, *i.e.*, the right to plead "not guilty," to require the State to meet its burden of proof in convicting Mr. Sailola, and to appeal said conviction.

161.   Plaintiff has complied with all conditions precedent to bring this action.

## *ACTUAL DAMAGES*

162.   Mr. Sailola specifically alleges that he has suffered actual damages as a result of Defendant's conduct.

163.   During each of the calls, Mr. Sailola lost the use of his cellular telephone and the time of service, which he had purchased.

164.   Mr. Sailola has suffered physical, mental, and/or emotional injury as a result of Defendant's outrageous conduct.   Mr. Sailola seeks compensation for

those injuries.

165.   Defendant has acted outrageously, including but not limited to its continued harassment of Mr. Sailola when it knew or should have known no money was due.  Defendant has acted outrageously in continually misleading Mr. Sailola through its false written representations regarding Mr. Sailola's rights and the consequences of paying the money, much of which occurred even after Mr. Sailola specifically told Defendant that he had appealed and was represented by an attorney.

## CAUSES OF ACTION

### COUNT ONE:  VIOLATIONS OF
### THE TELEPHONE CONSUMER PROTECTION ACT

166.   The TCPA prohibits the use of an "automatic telephone dialing system" when calling to a cellular telephone without the prior express consent of the recipient. 47 U.S.C. § 227(b)(1)(A).

167.   Within two years immediately preceding the filing of this lawsuit, Defendant telephoned Mr. Sailola's cellular telephone on numerous occasions, as specified above, using an automatic telephone dialing system.

168.   The TCPA also prohibits the use of an "artificial or prerecorded voice" when calling to a cellular telephone without the prior express consent of the recipient.

47 U.S.C. § 227(b)(1)(A).

169.   Within two years immediately preceding the filing of this lawsuit, Defendant telephoned Mr. Sailola's cellular telephone on numerous occasions, as specified above, using an artificial or prerecorded voice.

170.   Mr. Sailola never gave express consent for either law enforcement, the State of Hawai'i, or Defendant to call his cellular telephone number.

171.   None of these calls was for an emergency purpose, but instead were attempts to collect money from Mr. Sailola that was not owed.

172.   Mr. Sailola asserts that Defendant obtained his cellular telephone number through a method of finding telephone numbers through third parties which is known as "skip tracing." **See Exhibit Eight.**

173.   Insofar as Mr. Sailola might be found to have consented to the calls before December 6, 2012, which he did not, Mr. Sailola revoked any such consent when he requested and was granted the mandatory stay of his sentence on December 6, 2012 and/or filed his timely appeal on January 4, 2013.

174.   Mr. Sailola also expressly revoked any prior consent in his July 8, 2013 teleconference with Defendant.

175.   Defendant admits that it made "approximately forty-seven (47)" calls to Mr. Sailola.  **See Exhibit Nine**.

31

176.   Mr. Sailola asserts that Defendant actually auto-dialed Mr. Sailola's cellular telephone sixty-six times.

177.   During many of these calls Defendant left messages on Mr. Sailola's voicemail.

178.   Mr. Sailola notified Defendant that the underlying account was disputed and he had retained counsel on July 8, 2013.

179.   Defendant continued to call Mr. Sailola from an automatic telephone dialing system after being notified of Mr. Sailola's dispute and attorney representation on July 8, 2013.

180.   Defendant's conduct of calling Mr. Sailola repeatedly after Mr. Sailola's notification that the account was disputed and that he was represented by counsel demonstrates that Defendant's automated calls were willful and/or knowing violations of the TCPA.

181.   There were fifty-six (56) automated calls placed by Defendant after Mr. Sailola notified Defendant of his legal representation on July 8, 2013.

182.   Mr. Sailola asserts that all the calls placed by Defendant while using its automatic dialing system should be found to be willful and/or knowing violations of the TCPA.

183.   Defendant knew or should have known that insofar as Mr. Sailola

might have, at some point, consented to the auto-dialed cellular telephone calls and/or use of the automatic prerecorded message system, said consent had revoked through:  1) the stay of the sentence; 2) the filing of the appeal; or 3) Mr. Sailola's conversation with them on July 8, 2013.

184.   Defendant's refusal to place Mr. Sailola's cellular telephone number on a "do not call" list after July 8, 2013 further demonstrates that Defendant's automated calls were willful and/or knowing violations of the TCPA.

## *COUNT TWO: NEGLIGENCE*

185.   Defendant had a duty to conduct its business in compliance with the Hawai'i Revised Statutes, the Telephone Consumer Protection Act, and all other applicable statutes governing its conduct.  Defendant had a contractual duty to comply with all state and federal laws in performance of its contract with the State of Hawaii, *see* Paragraph 11, above.  Defendant also had a duty to refrain from attempting to collect money that was not due.  Defendant had a further duty to ascertain whether the money it sought to collect was due and owing.  Defendant had a duty not to mislead or misadvise Mr. Sailola regarding his still pending criminal case and/or the consequences of his paying the money MSB sought to collect.

33

186.   Defendant breached its duty in one or more of the following ways:  1) using an automatic telephone dialing system to repeatedly call Mr. Sailola and/or using an automatic pre-recorded message system without first obtaining Mr. Sailola's express written consent; 2) using an automatic telephone dialing system to repeatedly call Mr. Sailola and/or using an automatic pre-recorded message system after Defendant knew or should have known that any prior express consent had been revoked;  3) using an automatic telephone dialing system to repeatedly call Mr. Sailola after being notified that Mr. Sailola was represented by counsel; 4) using an automatic telephone dialing system to repeatedly call Mr. Sailola after being told by Mr. Sailola that he was represented by an attorney and whether the money allegedly owed was being disputed;  4) failing to provide Mr. Sailola with the requisite notices when communicating with him to collect the money; 5) engaging in conduct the natural consequence of which is to harass, oppress or abuse any person; 6) having communications with Mr. Sailola when Mr. Sailola was represented by an attorney; 7) falsely representing or creating a false impression that Defendant was vouched for, bonded by, affiliated with, or an instrumentality, agent, or official of, this State or any agency of federal, state, or local government; 8) falsely representing or implicating of the character, extent, or amount of a claim against a Mr. Sailola, or of its status in any legal proceeding; 9) attempting to collect money

34

that it knew or should have known was not owed; 10) falsely representing that Mr. Sailola would waive rights he specifically asserted if he paid the alleged debt;  11) holding itself out as a collection agency as defined by Hawaii law; 11) misadvising Mr. Sailola about the status of his legal proceeding, rights surrounding those proceedings, and the consequences of Mr. Sailola's actions and/or proposed actions; and 11) the collection of or the attempt to collect from Mr. Sailola all or any part of the Defendant's fees or charges for services rendered.

187.   Defendant's actions or omissions did cause and proximately cause the physical and mental injury to Mr. Sailola which Mr. Sailola did suffer.

188.   Defendant, as an assignee and/or agent of the District Court and custodian of Mr. Sailola's personal financial records, owes a duty to Mr. Sailola to properly maintain those records and comply with any requests for review.

189.   Mr. Sailola disputed the validity of the underlying debt in his July 16, 2013 teleconference with Defendant's representative.

190.   Despite the dispute, Mr. Sailola has never received any subsequent verification of the debt's validity.  Instead, Defendant has continued to harass Mr. Sailola by repeatedly and consistently causing his cellular telephone to ring at all times of the day and night.

191.   Mr. Sailola suffered actual damages as a result of this conduct.

35

### COUNT THREE:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

192.   Defendant's conduct in this case was outrageous and beyond any bounds of decency.   Examples of this outrageous conduct include:   Defendants continued harassment of Mr. Sailola by using its automated dialing system to cause Mr. Sailola's cellular telephone to ring repeatedly, which occurred not only after Defendant should have known that any possible consent that could have been previously provided had been revoked, but also after Mr. Sailola told Defendants that he had appealed and that he was represented by an attorney who was "taking care" of the matter; Defendant's demand of not only money that was not due to the State but also Defendant's own fees; and, perhaps most egregiously by completely misadvising Mr. Sailola of the status of his criminal proceedings, his rights, and the consequences should he comply with Defendant's false demands.

193.   Defendant acted intentionally or, at best, recklessly.   Defendants intentionally continued to call and send false communications regarding Mr. Sailola's rights after it knew that Mr. Sailola had appealed and any prior consent had been revoked.

194.   Mr. Sailola did suffer extreme mental and/or emotional distress because of Defendant's actions.   Mr. Sailola has suffered shock, mental anguish,

36

and confusion over Defendant's actions and misrepresentations.  Mr. Sailola has suffered a loss of his driver's license due to Defendant's failure to correct its conduct even after having been notified that it or its principle was acting without authority.

195.   Mr. Sailola suffered actual damages as a result of this conduct.

### COUNT FOUR: NEGLIGENT TRAINING AND/OR NEGLIGENT SUPERVISION

196.   Defendant acted negligently in failing to properly abide by the regulations set for governing the collection of debts in the State of Hawai'i. Further, insofar as Defendant could be an agent of the State of Hawai'i, Defendant's employees acted outside the scope of their employement.

197.   The contract between Defendant and the State necessarily defines the scope of employment as to Defendant's employees.  The contract, **Exhibit Two**, specifically requires Defendant to comply with all federal, state, and local laws.

198.   At least one of Defendant's employees, whose actual identity remains unknown, acted outside the scope of his or her employment when, despite notice that Mr. Sailola had availed himself of Defendant's own principle's laws, the employee(s) continued to harass Mr. Sailola and misrepresent his rights.

199.   Moreover, the employee(s) specifically misrepresented those laws and

Mr. Sailola's rights pursuant to those laws in an attempt to collect money that they knew or should have known was not due.  This conduct was outside the scope of employment.

200.   Defendant was negligent in failing to properly train and/or supervise its employees.

## COUNT FIVE:
## INTRUSION UPON SECLUSION

201.   Mr. Sailola asserts the Defendant has invaded his privacy by committing an unreasonable intrusion upon his seclusion.  Defendant has also given public disclosure to his private facts.

202.   Information about a plaintiff need not be published to establish a claim for invasion of privacy based on an unreasonable intrusion upon the plaintiff's seclusion. The Restatement (Second) of Torts § 652B (1977).

203.   Defendants' gross and careless conduct unlawfully invaded Mr. Sailola's personal privacy and caused Mr. Sailola to suffer mental anguish and actual damages.

204.   Defendants' conduct was intentional and/or reckless and Mr. Sailola is entitled to recover exemplary damages in an amount to be set by the trier of fact.

205.   Mr. Sailola does not currently owe the money, and therefore

Defendant's attempts to collect this money from him were false and deceptive practices and threats to take action that they were not legally entitled to take.

206.   Defendant's repeated attempts to collect this money from Mr. Sailola, who did not owe the money, was an invasion of Mr. Sailola's privacy and his right to be left alone.

207.   Defendants' illegal abusive communications, as more fully described above, were the direct and proximate cause of severe emotional distress on the part of Mr. Sailola.

208.   Mr. Sailola has suffered actual damages as a result of these illegal communications by Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of his personal privacy.

## **TRIAL BY JURY**

209.   Mr. Sailola is entitled to and hereby respectfully demands a trial by jury on all issues so triable.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendant in favor of the Plaintiff as follows:

[ 39 ]

a)     Declaratory judgment that Defendant violated Mr. Sailola's rights under the Telephone Consumer Protection Act;

b)     That Plaintiff be awarded statutory damages of $500.00 per call for each negligent violation of the Telephone Consumer Protection Act, pursuant to 47 U.S.C. §227(b)(3)(B);

c)     That Plaintiff be awarded statutory damages of $1,500.00 per call for each call found to be a willful or knowing violation of the Telephone Consumer Protection Act, pursuant to 47 U.S.C. §227(b)(3);

d)     That Plaintiff be awarded compensatory damages;

e)     That the Court declare all defenses raised by Defendant to be insufficient; and

f)     Such other and further relief, including injunctive relief as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable.

DATED:  Honolulu, Hawaii; August 14, 2014.

*s/Richard L. Holcomb*
Richard L. Holcomb, #9177
Attorney for Plaintiff
1136 Union Mall, Suite 808
Honolulu, TN 96813
(808) 545-4040
rholcomblaw@live.com
