RICHARD L HOLCOMB (HI Bar No. 9177)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite # 808
Honolulu, HI  96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@live.com

JUSTIN A. BRACKETT (HI Bar No. 9954)
1136 Union Mall, Suite # 805
Honolulu, HI  96813
Telephone: (808) 545-4040
Email:  justinbrackettlaw@gmail.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| REED SAILOLA, | ) |
| | ) CASE NO. 1:13-CV-00544 HG-RLP |
| Plaintiff, | ) |
| vs. | ) PLAINTIFF REED SAILOLA'S |
| | ) MEMORANDUM IN OPPOSITION |
| MUNICIPAL SERVICES BUREAU, | ) TO DEFENDANT MUNICIPAL |
| and JOHN DOES 1-50. | ) SERVICES BUREAU'S MOTION |
| | ) FOR STAY OF PROCEEDINGS [Doc. |
| Defendant. | ) 59]; DECLARATION OF RICHARD |
| | ) L. HOLCOMB; EXHIBITS ONE |
| | ) THROUGH NINE; CERTIFICATE OF |
| | ) SERVICE |
| | ) |
| | ) HEARING: |
| | ) |
| | ) NON-HEARING MOTION |
| | ) |
| _____ | ) Judge: Honorable Richard L. Puglisi |

i

# TABLE OF CONTENTS

**A.** **The issues presented in both petitions have have already been decided and are not matters of first impression.** . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*The ACA Petition* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*The Santander Petition* . . . . . . . . . . . . . . . . . . . . . . . . . 9

**B.** **The courts should decide these issues.** . . . . . . . . . . . . . . . . . . 10

**C.** **Defendant seeks an indefinite stay that could last for years.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**D.** **Both petitions present issues inapplicable to the facts of this case.** . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*The ACA Petition* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*The Santander Petition* . . . . . . . . . . . . . . . . . . . . . . . . . 18

**E.** **The case should not be stayed pursuant to this Court's inherent authority.** . . . . . . . . . . . . . . . . . . . . . . . 27

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# <u>TABLE OF AUTHORITIES</u>

**Reported Cases:**

*Adamcik v. Credit Control Services, Inc.,*
832 F.Supp.2d 744 (W.D. Tex. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19

*Andrus v. Glover Constr. Co*., 446 U.S. 608 (1980) . . . . . . . . . . . . .   4

*Beal v.  Wyndham Vacation Resorts, Inc.,*
956 F.Supp.2d 962 (W.D.Wis. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Brown v. MCI WorldCom Network Services, Inc.*,
277 F.3d 1166 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,   5,
7, 10

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Damarest v. Manspeaker*, 498 U.S. 184 (1991) . . . . . . . . . . . . . . . . . .  17

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) . . . . . . . . 5, 9

*Geiger v. Fed. Bureau of Prisons,*
487 F.Supp.2d 1155 (C.D.Cal.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hamlett v. Santander Consumer USA, Inc.*,
931 F. Supp. 2d 451 (E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*Iniquez v. The CBE Group*,
969 F.Supp.2d 1241 (E.D. Cal. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17

*Jamison v. First Credit Servs*., 290 F.R.D. 92 (N.D. Ill. 2013) . . . . . . . 11-12

*Kloeckner v. Solis*, 133 S. Ct. 596 (2012) . . . . . . . . . . . . . . . . . . . . . . 4

*Leyva v. Certified Grocers of California, Ltd.*,
593 F.2d 857 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Meyer v. Portfolio Recovery Assocs., LLC*,

696 F.3d 943 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Mims v. Arrow Fin. Serv. LLC*, 132 S. Ct. 740 (2012) . . . . . . . . . . . . 4, 18

*Nat'l Communs. Ass'n v. AT&T*, 46 F.3d 220 (2d Cir.1995) . . . . . . . . 10

*Neder v. United States*, 527 U.S. 1 (1999) . . . . . . . . . . . . . . . . . . . . . . . 9

*Osorio v. State Farm Bank, F.S.B*., 746 F.3d 1242 (11th Cir. 2014) . . . 3

*Soppet v. Enhanced Recovery Co., LLC*,
679 F.3d 637 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*State v. Bryan*, 124 Hawai'i 404, 245 P.3d 477 (2010) . . . . . . . . . . . . 23

*State v. Kiese*, 126 Hawai'i 494, 273 P.3d 1180 (2012) . . . . . . . . . . .  24

*United States v. Gen. Dynamics Corp.,*
828 F.2d 1356 (9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*U.S. v. Mead Corp.*, 533 U.S. 218 (2001) . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Western Pac. R. Co.,* 352 U.S. 59 (1956) . . . . . . . . . .  2

**Unreported Cases:**

*Ayers v. Verizon Comm., Inc., et. al.*,
No. 8:14-cv-626-T-30-MAP,
2014 WL 2574543 (M.D. Fla. June 9, 2014) . . . . . . . . . . . . . . . . . . . .  7

*Charvat v. Allstate Corp*., No. 13C7104,
2014 WL 866377 (N.D. Ill. Mar. 5, 2014) . . . . . . . . . . . . . . . . . . . . . . .12

*Corridean v. Restore Financial Services*,
No. 06-CV-524-HU, 2007 wl 1114221
(D.Oregon Apr. 10, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Daniels v. ComUnity Lending, Inc*.,
No. 13CV488-WQH-JMA, 2014 WL 51275
(S.D. Cal. Jan. 6, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Echevvaria v. Diversified Consultants, Inc.*,
No. 13-cv-4980-LAK-AJP, 2014 WL 929275
(S.D.N.Y. Feb. 28, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Fail v. Diversified Consultants*,
No. 8:14-cv-525-T-30-EAJ, 2014 WL 2574532
(M.D. Fla. June 9, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Frydman v. Portfolio Recovery Assocs., LLC,*
No. 11-cv-524, 2011 WL 2560221 (N.D. Ill. June 28, 2011) . . . . . . . 4

*Lardner v. Diversified Consultants*,
No. 1:13-cv-22751-UU, 2014 WL 1778960 (S.D. Fla. May 1, 2013) . .7

*Murray v. Diversified Consultants, Inc.*,
No. 8:13-cv-3074-T-30-AEP,
2014 WL 2574042 (M.D. Fla. June 9, 2014) . . . . . . . . . . . . . . . . . . . 7

*Pimental v. Google, Inc.*, No. C-11-02585-YGR,
2012 wl 1458179  (N.D. Cal. Apr. 26, 2012) . . . . . . . . . . . . . . . . . . . 10-
11, 12

*Ramon Gutierrez, et. al. v. Barclays Group,*
No. 10-cv-1-12 DMS (BGS),
2011 WL 579238 (S.D.Cal. Feb. 9, 2011) . . . . . . . . . . . . . . . . . . . . . . 9

*Robinson v. Midland Funding, LLC*,
No. 2:11-cv-291, 2011 WL 1434919 (S.D. Cal. Apr. 13, 2011) . . . . . . 4, 11

*Swope v. Credit Mgmt., L.P.*,
No. 4:12CV832CDP, 2013 wl 607830 (E.D. Mo. Feb. 19, 2013) . . . .  5, 7

*Tovar v. Midland Credit Mgmt.*, No. 10cv2600,
2011 WL 1431988 (S.D. Cal. Apr. 13, 2011) . . . . . . . . . . . . . . . . . . . 12

*United States v. DISH Network, L.L.C.*, No. 09-3073,
2011 WL 475067 (C.D. Ill. Feb. 4, 2011) . . . . . . . . . . . . . . . . . . . . . . 2

*Yazo v. Law Enforcement Systems, Inc.*,

No. CV 08-03512 (AGRx), 2008 wl 4852965
(C.D. Cal. Nov. 7, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Statutes, Regulations and Other Authorities**

47 U.S.C. § 227 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,  15-16, 17

Haw. Rev. Stat. § 291E-61 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Haw. Rev. Stat. § 701-107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Haw. Rev. Stat. § 804-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

In re Rules and Regulations Implementing the
Telephone Consumer Protection Act of 1991,
23 FCC Rcd 559 (Jan. 4, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO STAY PROCEEDINGS

Defendant seeks an indefinite stay of these proceedings.[1]  The reason cited by Defendant is because debt collectors have petitioned the Federal Communications Commission (FCC) to change existing law and FCC rulings in favor of exempting their industry and/or automated dialing systems from the application of the Telephone Consumer Protection Act ("TCPA").   Another petition has been filed by one debt collector requesting the complete reinvention of the law pertaining to revocation of consent.  These petitions are not only frivolous but also are inapplicable to the facts of this case.

Nevertheless, Defendant cites the "primary jurisdiction doctrine" in support of its request for a stay of proceedings.  This doctrine does not "require that all claims within an agency's purview be decided by the agency . . . [n]or is it intended to 'secure expert advice' for the courts from regulatory agencies every

---

[1] This Motion was filed on October 15, 2014, **five days before Mr. Sailola's long-scheduled depositions of defense witnesses in Texas**.  Defendants were noticed of these depositions on August 21, 2014, two entire months before the depositions were scheduled.  [*See* Doc. 61-1, pp. 3-4]  On October 17, 2014, the day before Attorneys Holcomb and Brackett were scheduled to fly to Austin, Texas to conduct those depositions (for a total of four days), defense counsel informed the undersigned that the witnesses would not be made available.  Holcomb Decl., **Exhibit One**.  This and the other Motion to Stay, [Doc. 61], were the excuses presented for ignoring the Notices of Deposition.  *Id*.  These motions are Defendant's attempts to indefinitely thwart Mr. Sailola's discovery and delay Mr. Sailola's inevitable discovery.  The motion should be denied.

1

time a court is presented with an issue conceivably within the agency's ambit." *Brown v. MCI WorldCom Network Services, Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002); *United States v. Gen. Dynamics Corp.,* 828 F.2d 1356, 1363 (9th Cir.1987) ("While it is certainly true that the competence of an agency to pass on an issue is a necessary condition to the application of the doctrine, competence alone is not sufficient.").

Instead, "[p]rimary jurisdiction applies in a limited set of circumstances." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "Applicability turns on the 'superordinate question' of 'whether the reasons for the existence of the doctrine are present and whether the purposes it serves **will be aided by its application in the particular litigation**.' *United States v. DISH Network, L.L.C.*, No. 09-3073, 2011 WL 475067 (C.D. Ill. Feb. 4, 2011) (*quoting United States v. Western Pac. R. Co.,* 352 U.S. 59, 64 (1956)) (emphasis added). Accordingly, "it is to be used only if a claim '**requires resolution of an issue of first impression, or of a particularly complicated issue** that Congress has committed to a regulatory agency.'" *Id.* (*quoting Brown*, 277 F.3d at 1172) (emphasis added).

The two petitions cited by Defendant and currently pending before the FCC are styled *In re Petition for Rulemaking of ACA Int'l*, CG Dkt. No. 02-278 (Jan. 31, 2014) ("ACA Petition") and *In re Santander Consumer USA, Inc.'s Petition for Declaratory Ruling*, CG Dkt. No. 02-278 (July 10, 2014) ("Santander Petition").

[Doc. 59-1, pp. 9-10]  Neither of these petitions present issues of first impression or complex issues.  Neither of these petitions present issues applicable to the facts of this case.

This Court should not grant Defendant the requested indefinite stay.

### A.  The issues presented in both petitions have already been decided and are not matters of first impression.

#### *The ACA Petition*

Defendant first insists that because the Association of Credit and Collections Professionals ("ACA") has petitioned the FCC to adopt rules exempting debt collectors and/or a category of autodialers, this case should be stayed indefinitely. The ACA does not raise matters of first impression as the FCC and courts have repeatedly rejected these arguments.

**Neither the TCPA nor implementing federal regulations contain a debt collector exception, or any exceptions related to calls made to cellular phones.** *Iniquez v. The CBE Group*, 969 F.Supp.2d 1241, 1247 (E.D. Cal. 2013).

It is well-settled that debt collectors are not exempt from the TCPA.  *See Osorio v. State Farm Bank, F.S.B*., 746 F.3d 1242 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012); *and Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943 (9th Cir. 2012) (confirming District Court decision that debt collectors are subject to TCPA, stating "the TCPA was designed to protect against the types of calls at issue in this case.")*; Hamlett v.*

*Santander Consumer USA, Inc.*, 931 F. Supp. 2d 451 (E.D.N.Y. 2013); *Frydman v. Portfolio Recovery Assocs., LLC,* No. 11-cv-524, 2011 WL 2560221 (N.D. Ill. June 28, 2011); *Robinson v. Midland Funding, LLC*, No. 2:11-cv-291, 2011 WL 1434919 (S.D. Cal. Apr. 13, 2011); *Daniels v. ComUnity Lending, Inc*., No. 13CV488-WQH-JMA, 2014 WL 51275 (S.D. Cal. Jan. 6, 2014).

The Supreme Court has (at least tacitly) recognized this lack of an exception for debt collectors in *Mims v. Arrow Fin. Serv. LLC*, 132 S. Ct. 740, 745 (2012). Further, it is settled law that additional exceptions should not be read into a statute. *Andrus v. Glover Constr. Co*., 446 U.S. 608, 616-617 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."). The statute clearly does not exempt debt collectors, and it appears legally impossible for the FCC to create such an exception regardless of the ACA's policy arguments.[2] *Kloeckner v. Solis*, 133 S. Ct. 596, 607 n.4, (2012) ("even the most formidable argument concerning the statute's purposes could not overcome the clarity we find in the statute's text.").

Additionally, and importantly in this context, the FCC has itself very clearly rejected the debt collection industry's (and specifically the ACA's) attempts to

---

[2] As discussed below, it appears to Mr. Sailola that the FCC has no statutory authority to exempt debt collectors from the TCPA even if it were so inclined.

obtain some sort of blanket immunity from TCPA liability. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* Declaratory Ruling (2008) at ¶¶ 10 & 14, attached as **Exhibit Two**. "**The FCC has already considered the particular issues posed by the [ACA] petition at least twice. Both times, it has held that predictive dialers are considered automatic telephone dialing systems subject to the TCPA, and that debt collectors are not exempt from the statute's prohibitions.**" *Swope v. Credit Mgmt., L.P.*, No. 4:12CV832CDP, 2013 wl 607830, at *4 (E.D. Mo. Feb. 19, 2013) (emphasis added). As recent as four months ago, the FCC submitted an *amicus* brief to the Second Circuit Court of Appeals, concluding that a debt collector "violated the TCPA by Making Debt Collection Calls to Nigro's Cellular Telephone. . ." where consent had not been obtained. *See Brief for the FCC as Amicus Curiae*, p. 8, No. 13-1362 (2nd Cir. June 30, 2014). **Exhibit Three**.

This is hardly a matter of first impression and Defendant's instant motion should be denied. *See Brown*, 277 F.3d at 1172. There is no indication that the FCC is going to completely reverse itself, ignore the other two branches of government, and unleash debt collectors' robo-dialers on consumers, particularly considering that the TCPA is a consumer protection statute intended to protect against this specific activity. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013); *Soppet* 679 F.3d at 638-639. The virtually inconceivable possibility of

that happening is clearly no basis to stay this case indefinitely (and foreseeably for years) as requested by Defendant.

**The FCC has also specifically found that predictive dialers are automated dialing systems ("ATDS") contemplated by the TCPA.**  Defendant admits that existing FCC orders have held that predictive dialers, including those used by Defendant, are ATDS.  [Doc. 59-1, p. 9 ("[I]n 2008, in response to a request for clarification that a predictive dialer meets the definition of an ATDS only when it randomly or sequentially generates telephone numbers, **the FCC issued a declaratory ruling affirming that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers**.") (emphasis added)]  In fact, Defendant cites in its brief **the most recent FCC ruling "affirming that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."**  [Doc. 59-1, p. 9 (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 23 F.C.C. Rcd. 559, 566 (2008) (emphasis added)]

The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity – (A) to ***store or produce*** telephone numbers to be called, using a random or sequential number generator."  47 U.S.C.  §  227(a)(1)(A) (emphasis added).  This prohibited storage of numbers "to be dialed" is a specific

feature of Defendant's auto-dialer specifically identified by the Defendant.  [Docs. 59-9, ¶ 12 ("the Interactive Intelligence system '**can store numbers you load to be dialed**.'"); 59-10 ("Dialer **can store numbers you load to be dialed**, but *cannot produce numbers to dial, ramdomly or sequentially . . .* **Yes, dialer then dials out only from the lists that are loaded for it to dial**" (emphases added)]

This issue is also not a matter of first impression.  Defendant's Motion should be denied.  *Brown*, 277 F.3d at 1172.

While there are some (albeit few) contrary decisions, it is not surprising that District Courts, faced with the same defense delay tactics as now attempted by Defendant, have refused to stay pending TCPA actions based on this specific ACA Petition.  *Swope, supra.*; *Susan E. Stolinski v. Nebraska Student Loan Program, Inc.*, No. 8:14CV140, Doc. 22 "Order" (D. Neb. September 18, 2014) (attached as **Exhibit Four**); *See also Lardner v. Diversified Consultants*, No. 1:13-cv-22751-UU, 2014 WL 1778960 at *5-6 (S.D. Fla. May 1, 2013); *See Ayers v. Verizon Comm., Inc.*, *et. al.*, No. 8:14-cv-626-T-30-MAP, 2014 WL 2574543 (M.D. Fla. June 9, 2014); *See Fail v. Diversified Consultants*, No. 8:14-cv-525-T-30-EAJ, 2014 WL 2574532 (M.D. Fla. June 9, 2014); *See Murray v. Diversified Consultants, Inc.*, No. 8:13-cv-3074-T-30-AEP, 2014 WL 2574042 (M.D. Fla. June 9, 2014); *See Echevvaria v. Diversified Consultants, Inc.*, No. 13-cv-4980-LAK-AJP, 2014 WL 929275 (S.D.N.Y. Feb. 28, 2014) (denying motion to stay

and granting Plaintiff summary judgment in TCPA claim, awarding $1,000.00 in treble damages for each call, against Diversified Consultants, Inc.); *See Haire v. Sprint Communications, et al. No.* 2:13-CV-00701-AKK (N.D. Ala. July 24, 2014) (summarily denying a motion to stay based upon the primary jurisdiction doctrine by cell phone company and debt collector defendants).

> 'The interests of consistency and uniformity are better served by allowing this case to proceed based on the prior interpretations of the FCC [about whether the TCPA applies to debt collection] . . ., rather than postponing this case for an indefinite amount of time because of the possibility that the FCC may decide to reconsider its past position.' *Swope*, 2013 WL 607830, at *4; *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014); *Iniquez v. The CBE Group*, 969 F.Supp.2d 1241, 1247 (E.D. Cal. 2013) (noting neither TCPA nor implementing federal regulations contain a debt collector exception, or any exceptions related to calls made to cellular phones)).

*Stolinski* (**Exhibit Four**) at *3-4.

An additional reason for denying the stay is that Plaintiffs bear the burden of proving that Defendants employed an ATDS. *Stolinski*, at *4. Here, Mr. Sailola is well aware of that burden and is prepared to meet it. Defendant's Motion should be summarily denied as in *Swope* and *Stolinski*.

### *The Santander Petition*

**Courts have also consistently decided against Santander's requested rules.** "Where Congress uses terms that have accumulated settled meaning under … the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Neder v. United States*, 527 U.S. 1, 21 (1999).   Accordingly, other federal courts have routinely adopted the common law meaning of "consent" for the purpose of determining that "prior express consent," as that term is used in the TCPA, **can be revoked**.   *Gager* 727 F.3d at 270-71 (holding "that the TCPA allows consumers to revoke their prior express consent"); *Beal v. Wyndham Vacation Resorts, Inc.,* 956 F.Supp.2d 962, 976-79 (W.D.Wis. 2013); *Adamcik v. Credit Control Services, Inc.,* 832 F.Supp.2d 744, 749–50 (W.D. Tex. 2011); *Ramon Gutierrez, et. al. v. Barclays Group,* No. 10-cv-1-12 DMS (BGS), 2011 WL 579238, *3–4 (S.D.Cal. Feb. 9, 2011).   Moreover, traditional means of revoking consent are routinely held to be valid in the context of the TCPA:

> Under traditional notions of consent, revocation is sufficient so long as the actor "knows or has reason to know that the other is no longer willing for him to continue the particular conduct." *Restatement (Second) of Torts* § 892A. Writing is not required.

*Beal*, 956 F. Supp. 2d at 979; *Osorio*, 746 F.3d at 1255 ("Common-law notions of consent generally allow oral revocation . . . We therefore conclude that [Plaintiffs]

in the absence of any contractual restriction to the contrary, were free to orally revoke any consent previously given" in the context of the TCPA).

The risk of the FCC rejecting this longstanding and well-settled body of law is virtually non-existent.  Defendant's Motion should be denied.

## B.  The courts should decide these issues.

**The issues presented by these petitions are also not particularly complicated.**  *See Brown*, 277 F.3d at 1172.  Even assuming that the FCC had not already decided against the rules requested in the petitions, whether this Defendant used an ATDS or obtained prior express consent to violate the TCPA should be determined based upon well-settled statutory interpretation and relevant case law. The FCC is not any better equipped to determine legislative intent than this Court. These are legal issues that should be decided by a Judge and/or factual issues that should be decided by a jury. The Second Circuit made this point clear in *Nat'l Communs. Ass'n v. AT&T,* 46 F.3d 220 (2d Cir.1995):

> Primary jurisdiction does not extend to a legal question that is within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of the particular case.

The Court in *Pimental v. Google, Inc*., No. C-11-02585-YGR, 2012 wl 1458179 at *3 (N.D. Cal. Apr. 26, 2012) also noted this point specifically in the TCPA context:

**A district court is suited to resolve issues of statutory interpretation of the phrase "prior express consent" and the term "capacity."** While the doctrine of primary jurisdiction may be invoked in cases involving statutory interpretation, such situations typically involve resolution of an issue of first impression, or of a particularly complicated issue best resolved by the administrative agency. See Clark, supra, 523 F.3d at 1114 (finding primary jurisdiction applied where claim raised issue of first impression as to "whether VoIP services should be classified as 'telecommunications services' or 'information services'"; FCC was actively considering the issue; and Congress specifically delegated responsibility to FCC to determine the issue) (citing Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc., 307 F.3d 775, 781-82 (9th Cir. 2002) (referring a claim to the Registrar of Copyrights where it presented an issue of first impression as to "whether decompiled object code qualifies for registration as source code under the Copyright Act and regulations" and where the issue was one "Congress has committed to the Registrar of Copyrights")). **Interpretation of these statutory terms do not require the FCC's policy expertise or specialized knowledge and are matters safely within the conventional experience of judges. Indeed, courts and the FCC have interpreted these statutory terms in the past.**

*Id.* (emphases added) (denying Defendant's requested stay). *See also*: *Robinson v. Midland Funding, LLC, supra*. (TCPA case- rejecting stay);  *Jamison v. First Credit Servs*., 290 F.R.D. 92 (N.D. Ill. 2013) (TCPA case –rejecting stay).

The primary jurisdiction doctrine was never intended to be a substitute for the Court's powers to adjudicate a case, nor was it intended to be a place for the Court to obtain an advisory opinion.  The *Jamison* court noted:

Moreover, "the doctrine is not designed to 'secure expert advice' from

agencies 'every time a court is presented with an issue conceivably within the agency's ambit.'" *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (quoting *Brown v. MCI Worldcom Network Servs.*, 277 F.3d 1166 (9th Cir. 2002)). Rather, the doctrine should only be invoked "if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." Id. (internal citations and quotations omitted).

*Jamison*, 290 F.R.D. 92, 98 (N.D. Ill. 2013).

### C. Defendant seeks an indefinite stay that could last for years.

**Moreover, courts have rejected motions to stay in TCPA cases based upon the lack of evidence that the FCC is going to promptly address the issue at hand.** See: *Charvat v. Allstate Corp.*, No. 13C7104, 2014 WL 866377, at *1, n.2 (N.D. Ill. Mar. 5, 2014); *Pimental*, *supra*.; *Tovar v. Midland Credit Mgmt.*, No. 10cv2600, 2011 WL 1431988 (S.D. Cal. Apr. 13, 2011).

The potentially extraordinary length of the requested stay is evident from Defendant's brief.  As Defendant observes in footnote 2 of its Memorandum, the issues raised in the ACA petition have been pending for two years, having been previously filed on **June 7, 2012**.  [Doc. 59-1, p. 2 (*citing In re Commc'n Innovators' Petition for Declaratory Ruling*, CG Dkt. No. 02-278 (June 7, 2012)] Instead of allowing the FCC to decide the petition (which would have undoubtedly resulted in the rejection of these arguments) "the petition described in *Hurle* was

**withdrawn on July 14, 2014 in favor of the ACA petition** . . ." [Doc. 59-1, p. 2, n. 2] Thus, this issue had been pending before the FCC **for two years**, **only to be withdrawn and re-submitted** in an obvious attempt by the collection industry to unscrupulously delay inevitable findings of liability.

These petitions and the manner in which this Defendant and others have attempted to use the petitions as a vehicle to delay and even escape justice should cause this Court to carefully scrutinize the motives of the petitioners and this Defendant. Both petitioners clearly violate or wish to violate the plain language of the TCPA and have obvious motives to request the FCC promulgate rules contrary to existing an well-settled law.  While petitioners are free to request adoption of whatever rules may benefit their subjective interests and bottom lines, this Court should afford such self-serving petitions little weight.  This Court should recognize the petitions for what they are – an industry's attempt to evade compliance with federal law through the constant filing of frivolous and previously rejected arguments which allow not only those petitioners but similarly situated entities such as this Defendant to argue for indefinite delay in the enforcement of federal law.

Further, nothing prevents either the ACA or Santander petition from being withdrawn (even after it has been submitted for **two years** or more) only to be replaced by another petition and so forth in perpetuity.  [*See* Doc. 59-1, p. 2 (*citing*

*In re Commc'n Innovators' Petition for Declaratory Ruling*, CG Dkt. No. 02-278 (June 7, 2012)]   These petitioners not only have obvious motives to request exemption from the TCPA, but also to manipulate their petitions in a manner which keeps the petitions perpetually undecided. Additionally, as has been shown by the multiple prior rejections of these same arguments by both the FCC and the federal bench, nothing prevents those with the similar self-serving interests to simply raise these issues again in separate petitions after the rejection of the current ACA and Santander petitions.   This would, if Defendant's position is adopted, require further indefinite stays.

The instant motion is Defendant's attempt to capitalize on this manipulation of the FCC's rule promulgation procedure and indefinitely thwart Mr. Sailola's discovery efforts to prevent Mr. Sailola's patently meritorious claims from being timely heard.  [*See* Doc. 61-1, p. 2 ("If the Motion to Stay Proceedings is granted, Plaintiffs [sic] will not be entitled to any discovery.")]  Defendant's request for an indefinite stay should be summarily denied.

### D.  Both petitions present issues inapplicable to the facts of this case.

Even if the repeated rejection of all of the issues raised in both petitions did not require denial of Defendant's motions, the raised issues are simply inapplicable to the facts of this case.

### *The ACA Petition*

**The FCC has no authority to exempt Defendant from liability in this case.**  The plain language of the TCPA prohibits ***any person*** from using automatic telephone dialing systems or artificial prerecorded voice messages to call cellular telephones without prior express consent.  47 U.S.C. § 227(b).  The FCC was granted carefully limited authority to implement the TCPA in 47 U.S.C. § 227(b)(2):

> (2) Regulations; exemptions and other provisions
>
> The Commission shall prescribe regulations to implement the requirements of this subsection. In implementing the requirements of this subsection, the Commission—
>
> ****
>
> (B) may, by rule or order, exempt from the requirements of **paragraph (1)(B) of this subsection**, subject to such conditions as the Commission may prescribe—
>
>> (i) calls that are not made for a commercial purpose; and
>>
>> (ii) such classes or categories of calls made for commercial purposes as the Commission determines—
>>
>>> (I) will not adversely affect the privacy rights that this section is intended to protect; and
>>>
>>> (II) do not include the transmission of any unsolicited advertisement;

47 U.S.C. § 227(b)(2)(B) (emphasis added).

"Paragraph (1)(B) of th[e] subsection" states:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

**\*\*\*\***

**(B)** to initiate any telephone call to **any residential telephone line** using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B) . . .

47 U.S.C.A. § 227(b)(1)(B) (emphasis added).

Accordingly, even if (as discussed above), it had not categorically rejected the arguments presented in the ACA petition, even as recently as four months ago, the FCC only has the authority to exempt special interest groups, such as debt collectors, from the TCPA's prohibitions pertaining to residential landlines.[3]  Yet,

---

[3] Notably, Defendant MSB **is not a debt collector**.  MSB has vehemently and successfully fought, in this case, to be exempted from Hawaii statutes that protect consumers against debt collectors.  [Doc. 25-1, pp. 24-26]  This Court agreed with Defendant.  [Doc. 36, pp. 21-23]  Other courts have found that companies which harass people who owe fines to government entities are also exempt from the FDCPA.  *Geiger v. Fed. Bureau of Prisons,* 487 F.Supp.2d 1155, 1159 (C.D.Cal.2007); *Corridean v. Restore Financial Services*, No. 06-CV-524-HU, 2007 wl 1114221 (D.Oregon Apr. 10, 2007); *Yazo v. Law Enforcement Systems, Inc.*, No. CV 08-03512 (AGRx), 2008 wl 4852965 (C.D. Cal. Nov. 7, 2008).  The instant motion is Defendant's attempt to exempt itself from all applicable federal regulation, leaving it free to harass and abuse even people such as Mr. Sailola who do not owe any money.  Manifest injustice would result.

Mr. Sailola has alleged that Defendant called his *cellular telephone*.  [Doc. 37, ¶¶ 59-63]

The FCC has no authority to exempt special interest groups, such as debt collectors from the TCPA's prohibitions against calling cellular telephones.   Not surprisingly, it has not done so.  *Iniquez*, 969 F.Supp.2d at 1247 (noting neither TCPA nor implementing federal regulations contain a debt collector exception, or any exceptions related to calls made to cellular phones).  Even if the FCC were to adopt a rule that changes the definition of "any person" to exclude the special interest group as it pertains to cellular telephones, this Court and others would lend such ruling no deference.   *Damarest v. Manspeaker*, 498 U.S. 184, 190 (1991) ("administrative interpretation of a statute contrary to language as plain as we find here is not entitled to deference"); s*ee e.g. U.S. v. Mead Corp.*, 533 U.S. 218, 228-29 (2001).

**Nevertheless, even if the ACA's requested rules regarding autodialers were adopted *in totem*, Mr. Sailola's claims for violations of the TCPA survive**.  The TCPA prohibits any person from calling a cell phone "using any automatic telephone dialing system ***or** an artificial or prerecorded voice . . .*"  47 U.S.C. § 227(b)(1) (emphasis added).  The petition is inapplicable to the leaving of artificial or prerecorded voice messages, [Doc. 59-5], which Mr. Sailola has plainly

alleged in his Amended Complaint. [Doc. 37, ¶¶ 60-61, 68-73, 74-78, 89-92, 95-101, 103][4]  Defendant's Motion should be denied.

## *The Santander Petition*

In this case Mr. Sailola has adequately and properly alleged blatant violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). [Doc. 37]   As our Supreme Court has explicitly found:

> th[at] Act makes it unlawful to use an automatic telephone dialing system or an artificial or prerecorded voice message, *without the prior express consent of the called party*, to call any emergency telephone line, hospital patient, pager, cellular telephone, or other service for which the receiver is charged for the call. See 47 U.S.C. § 227(b)(1)(A).

*Mims*, 132 S. Ct. at 745.  Defendant previously openly admitted that it used "its automated telephone dialing system" to call Mr. Sailola's cellular telephone on each of the dates alleged in the Complaint.[5]  [Doc. 10, ¶¶ 8-29]  The only real remaining issue in this case is whether Defendant had prior express consent to use

---

[4] Where Mr. Sailola has specific information proving that Defendant caused an artificial or prerecorded voice message to be left, that allegation is specifically made.  However, upon information and belief, further discovery will reveal that Defendant's automated dialing system causes artificial or prerecorded voice messages to be used in each call and that use of such system is knowing and/or willful.  Thus, Mr. Sailola is entitled to recover full statutory damages, if not for all 66 calls, for at least 47 calls to which Defendant has previously admitted.  [*See* Doc. 37, ¶¶ 128-30]

[5] Defendant apparently now claims that its earlier admissions are untrue.  [*See* Doc. 43, ¶¶ 13-73]

its auto-dialer to call Mr. Sailola's cellular telephone and/or to leave artificial prerecorded messages.

The Santander petition requests the FCC adopt the unprecedented position that "prior express consent" as contemplated by the FCC cannot be revoked at all. [Doc. 59-1, p. 12]   As discussed above, Santander's arguments are completely contrary to existing and longstanding law.   Thus, apparently recognizing the radical nature of its initial request, Santander then requests the FCC specify limited means by which a call recipient could revoke prior express consent.   [Doc. 59-1, pp. 12-13]

The Santander petition is inapplicable to this case.

**First, Defendant cannot show that prior express consent was provided at all.**  In the context of the TCPA, "the provision of a cell phone number to a creditor ... reasonably evidences prior consent by the cell phone subscriber to be contacted at that number regarding the debt." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd 559, ¶¶ 9–10 (Jan. 4, 2008); *Adamcik* 832 F.Supp.2d at 748. However, "the Commission held that an individual's provision of his her cellular telephone number conveys express consent to receive autodialed or prerecorded calls by creditors or third party debt collectors only if the telephone number was supplied '**in connection with an existing debt.**'" *Amicus of the FCC*, Case No. 13-1362 Doc. 112, p. 8 (2d

Cir. 2014) (emphasis added) (**Exhibit Three**).    Not only must a debt actually exist, but "[p]rior express consent is deemed to be granted **only** if the wireless number **was provided during the transaction that resulted in the debt owed**." *Id*. at ¶ 10 (emphasis added).

Defendant MSB bears the burden of provng that prior express consent had been provided by Mr. Sailola during the underlying petty misdemeanor case and that a debt existed.  *Id.*  ("To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. . . .  Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent.").  Defendant cannot meet this burden.

Defendant somehow claims Mr. Sailola provided his cell phone number to the Hawaii State Judiciary and, therefore, as the agent of the Hawaii State Judiciary, [*see* Doc. 25-1, p. 15], Mr. Sailola consented to the autodialed telephone calls and/or automated prerecorded voice messages.  However, Mr. Sailola has alleged that he "never provided 'prior express consent' to either Defendant of the

Hawaii State Judiciary."[6]   [Doc. 37, ¶¶ 62-63]   Mr. Sailola specifically disputes providing his cellular telephone number to the State of Hawaii during this transaction.   [Doc. 37, ¶ 64]

**Mr. Sailola's position is wholly corroborated by all information obtained in this case thus far**.   Indeed, based on Defendant's own collection logs that were disclosed in discovery, Defendant obtained Mr. Sailola's cellular telephone number through "skip tracing."[7]   **Exhibit Five**.   Further, Defendant's own Written Deposition of the Hawaii State Judiciary shows that, pertaining to this case, Mr. Sailola provided a different contact number to the Hawaii State Judiciary than the number Defendant unlawfully called as alleged in the Amended Complaint.   **Exhibit Six**.[8]

───────────────

[6] Mr. Sailola does not intend to waive any reliance on the fact that he revoked consent.

[7] The collection notes specifically show that Defendant called an unknown number on July 3, 5, and 6, 2013.  On July 8, 2013, Defendant employed "Skip Tracing," generating a "New Phone."  It then "saved" the number 8088644857, a number that was "VALID."  Two minutes later, Mr. Sailola "called back" and MSB noted that the number was a "good number."  **Exhibit Five**, p. 7.

[8] The deposition revealed that Mr. Sailola has received three traffic citations that are inapplicable to this case.  **Exhibit Six**, pp. 19-25 (Traffic Citations issued March 9, 2012, June 2, 2010, and May 27, 2008).  On August 8, 2011, the date of the alleged offense resulting in the purported debt (which is not owed but which Defendant purports to have attempted to collect), Mr. Sailola provided the telephone number "737-7563."  **Exhibit Six**, p. 25.  Defendant called a different

*Footnote continued

The entire Santander petition is based on the premise that prior express consent had been previously obtained.  In this case, there was no prior express consent and Defendant's Motion should be denied.

**Second, Mr. Sailola sought and was granted a mandatory stay pursuant to and in the precise manner contemplated by Hawaii law and, as a result, no debt existed and/or consent was revoked.**[9]  The Santander Petition also requests that the FCC define narrow and exclusive means by which a person subjected to autodialed phone calls or (presumably) artificial prerecorded messages could revoke consent.  Santander's request is fundamentally based on the premise that a debt was legitimately owed and subject to collection.  In this case, however, no money was owed or subject to collection and any consent (which was never provided in the first place) was revoked.

Hawaii law governs the means by which consent may be revoked.  Hawaii law mandates a stay of sentences for petty misdemeanors. Section 804-4(a) of the Hawaii Revised Statutes states, in applicable part:

number than that provided, resulting in its liability under the TCPA.  **Exhibit Five**, pp. 1-7 .

[9] Defendant characterizes this specific judicial granting of the mandatory stay as "Plaintiff alleges that an appeal should have stayed the execution of his sentence." [Doc. 59-1, p. 4]  While, as shown below, this is true pursuant to Hawaii law, Mr. Sailola specifically sought the stay in an appropriate manner under Hawaii State law.  [Doc. 37, pp. 20-24]  Mr. Sailola was specifically granted the mandatory stay by the entity that Defendant claims is its principal.  *Id.*

> The right to bail **shall continue after conviction of** a misdemeanor, **petty misdemeanor**, or violation, and release on bail may continue, in the discretion of the court, after conviction of a felony **until the final determination of any motion for a new trial, appeal, habeas corpus, or other proceedings that are made, taken, issued, or allowed for the purpose of securing a review of the rulings, verdict, judgment, sentence, or other proceedings of any court or jury in or by which the defendant has been arraigned, tried, convicted, or sentenced** . . .

Haw. Rev. Stat. § 804-4 (emphases added).  The offense of OVUII for which Mr. Sailola was convicted, [*see* Doc. 37, ¶¶ 15, 28-31], is a petty misdemeanor in Hawaiʻi. *Compare* Haw. Rev. Stat. § 291E-61(b)(1) *with* Haw. Rev. Stat. § 701-107(4); *State v. Bryan*, 124 Hawaiʻi 404, 412, 245 P.3d 477, 485 (2010).  Thus, the continuance of bail in Mr. Sailola's case was statutorily mandated when his appeal was filed and the Honolulu District Court explicitly ordered his sentence stayed and bail continued.  [Doc. 37, ¶¶ 20-24]

The effect of continued bail is also specifically codified in Section 804-4(b):

> **No defendant entitled to bail, whether bailed or not, shall be subject, without the defendant's written consent, to the operation of any sentence passed upon the defendant, while any proceedings to procure a review of any action of the trial court or jury in the premises are pending and undetermined, except as provided in section 641-14(a) or section 712-1207.**

Haw. Rev. Stat. § 804-4 (West) (emphasis added).  Thus, the "operation" of the sentence, which clearly includes collection of the fine, remains stayed because Mr. Sailola's appeal was and even now remains ongoing.

The plain language of these statutory provisions has been recently and specifically confirmed by the Hawaii Supreme Court:

> **Although stays are discretionary under HRS § 641–14, HRS § 804–4(a) provides, "The right to bail shall continue after conviction of a ... petty misdemeanor[.]"** *See also* HRS § 804–4(b)("**No defendant entitled to bail, ... shall be subject, without the defendant's written consent, to the operation of any sentenced passed upon the defendant, while any proceedings to procure a review of any action of the trial court ... are pending and undetermined, except as provided in section 641–14(a)[.]"**). In *State v. Ortiz,* we held, "An accused misdemeanant, petty misdemeanant, or law violator on bail is entitled to bail as a matter of right after conviction and pending appellate review." 74 Haw. 343, 356, 845 P.2d 547, 553 (1993). Furthermore, pursuant to *State v. Miller,* 79 Hawai'i 194, 200–01, 900 P.2d 770, 776–77 (1995), **once release on bail pending appeal is secured, a trial court is without jurisdiction under the sentence of probation that is the subject of the defendant's appeal.**

*State v. Kiese*, 126 Hawai'i 494, 510, 273 P.3d 1180, 1196 (2012) (emphases added).

That Court specifically held:

> We further hold that Kiese, as a petty misdemeanant on bail, pursuant to Hawai'i Revised Statutes ("HRS") §§ 804–4(a) and (b) (Supp. 2001), *State v. Ortiz,* 74 Haw. 343, 845 P.2d 547 (1993), and *State v. Miller,* 79 Hawai'i 194, 900 P.2d 770 (1995), was entitled to a continuance of bail as a matter of right pending appellate review, and the family court was without jurisdiction to execute Kiese's sentence. The family court therefore erred by denying Kiese a stay of his petty misdemeanor sentence pending appeal.

*Kiese*, 126 Hawai'i at 498, 273 P.3d at 1184.

Mr. Sailola affirmatively sought the mandatory stay and the Hawaii District Court specifically granted his request.  On December 6, 2012, immediately after imposing Mr. Sailola's sentence, the Honorable David W. Lo made clear that he stayed "the entire sentence" as statutorily required:

> THE COURT: All right. Court will sentence the defendant to 14 hours of substance abuse rehabilitation as well as undergo substance abuse assessment and possible treatment; one-year license revocation; pay fees in the amount of $107 DE, $30 CVCF, $25 neurotrauma, $250 DDRA of which $150 will be suspended, **and a fine of $250.**
>
> **Bail to apply in the event an appeal is not noticed.**
>
> MR. BURGE: Understood. And, your Honor, if we could come back on January 7th, that would be the appeal date because the 5th is on a Saturday.
>
> THE COURT: All right. January 7th p.m. Courtroom 10D.  Mr. Burge, you can inquire up to
> Mr. Matsunaga about being –
>
> MR. BURGE: Yes.
> THE COURT: -- on time in this courtroom. Thank you.
>
> MR. BURGE: Thank you, your Honor.
>
> MS. CLARKIN: Just a second. Jonathan –
>
> MR. BURGE: Yes.
>
> MS. CLARKIN: -- the ALDRO was reversed on –
>
> MR. BURGE: Yes. So he imposed it. He just suspended it.
>
> MS. CLARKIN: Okay. Okay.
>
> THE CLERK: Oh, you imposed, but did you impose the license –

THE COURT: I did.

MR. BURGE: **But he's staying it pending appeal.**

THE COURT: **Staying the entire sentence.**

THE CLERK: Thank you.

(End of Proceedings.)

Transcript of Proceedings, December 6, 2012, pp. 13-15 (Honorable David W. Lo, presiding) (attached hereto as **Exhibit Seven**) (emphases added).

Again, on January 7, 2013, Mr. Sailola's attorney appeared on his behalf.

**Exhibit Eight** at 1:52:52. The following occurred:

MR. BURGE:  Jonathan Burge for Defendant.  This is for perfection of appeal judge.  We did one of those stip fact trials.  I did file the appeal on Friday . . .

THE COURT:  Okay.  Sentence is stayed.

**Exhibit Eight** at 1:52:52 – 1:53:25.

Yet again, and on June 6, 2013, Mr. Sailola's case was heard by the Honolulu District Court.  Then, the Court specifically found:

Recall Bench Warrant.  Clerk has brought it to my attention that an appeal has been noted, so sentence stayed on appeal.  Okay, continue to stay sentence on appeal.

**Exhibit Nine** at 1:54:18 – 1:54:37.

Mr. Sailola requested and was granted a mandatory stay pursuant to Hawaii law.  Even if the FCC were to adopt the rules proposed by Santander, this case is

unaffected because pursuant to Hawaii law, to which Defendant is both legally and contractually bound, Mr. Sailola owed no money. [*see* Docs. 37, ¶¶ 12-14]  The Hawaii Judiciary had no jurisdiction to submit Mr. Sailola's account to Defendant for collection, no money was owed to the judiciary, and had Mr. Sailola ever provided prior express consent whether by providing his cellular phone number or otherwise, that consent was specifically revoked in the manner specified by Hawaii law.   Defendant nevertheless called Mr. Sailola on his cellular phone using an ATDS and/or artificial prerecorded message system without prior express consent.

The Santander petition is inapplicable here.  Defendant's Motion should be denied.

## E.  The case should not be stayed pursuant to this Court's inherent authority.

A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, **pending resolution of independent proceedings which bear upon the case**.

*Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) (emphasis added).  As shown above, the proceedings cited by Defendant have no bearing on this case whatsoever.  Not only are the petitions frivolous, but even if granted Mr. Sailola's claims are unaffected.  Defendant's Motion should be denied.

## **CONCLUSION**

Defendant is liable under the TCPA and its efforts to evade justice through an indefinite stay of these long-scheduled proceedings should be summarily denied.  The FCC has specifically rejected the arguments raised in the petitions. Even if the FCC were to somehow reverse its prior rulings and attempt to reverse long-standing judicial precedent by granting the petitions, the issues raised in those petitions are inapplicable to the facts of this case.  For these reasons, this Court should not stay this case pursuant to the primary jurisdiction document or pursuant to its inherent authority to do so.

DATED:  Honolulu, Hawaii; October 29, 2014.

*s/Richard L. Holcomb*
Richard L. Holcomb