

Federal Communications Commission
Washington, D.C. 20554
Office Of General Counsel
445 12th St. S.W.
Washington, D.C. 20554
Tel: (202) 418-1740 / Fax: (202) 418-2819

June 30, 2014

Ms. Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals
 for the Second Circuit
Thurgood Marshall United States Courthouse
40 Centre Street
New York, N.Y. 10007

**Re:** *Albert A. Nigro v. Mercantile Adjustment Bureau, LLC*, No. 13-1362

Dear Ms. Wolfe,

The Federal Communications Commission respectfully submits this

response to the Court's letter of May 19, 2014, in which the Court requested the

agency's views on the following question:

> Does a person, who is not a 'consumer' and is not responsible for the
> debt, consent to autodialed debt collection calls within the meaning of
> 23 F.C.C.R. 559 when he agrees to be called in connection with the
> termination of a deceased debtor's account, and the consent did not
> occur "during the transaction that resulted in the debt owed."

Court Letter at 3 (quoting *Implementing the Telephone Consumer Protection Act of*

*1991, Request of ACA International for Clarification and Declaratory Ruling*, 23

FCC Rcd 559, 564-55 (¶ 10) (2008)) (*ACA Order*). For the reasons stated in this

letter brief, the answer to the Court's question is no.

## BACKGROUND

**1. Statutory and Regulatory Background.**  The Telephone Consumer Protection Act (TCPA), Pub. L. 102-243, 105 Stat. 2394, prohibits making calls to cellular telephones using an automatic telephone dialing system (also known as an autodialer) or an artificial or prerecorded voice, except for emergency purposes or with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). The FCC has express authority to prescribe regulations to implement this provision. *Id.* § 227(b)(2); *see also* 47 C.F.R. § 64.1200 (implementing regulations).

Congress enacted this prohibition to protect telephone users "from unwanted communications that can represent annoying intrusions into daily life." *GroupMe, Inc./Skype Communications S.A.R.L Petition for Expedited Declaratory Ruling Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 29 FCC Rcd 3442, 2014 WL 1266074 (¶ 1) (2014) (*GroupMe Ruling*). "Congress did not expect the TCPA to be a barrier to normal, expected, and desired business communications." *Id.* at 3444 (¶ 8). *See* H.R. Rep. 102-317, at 17 (1991). But Congress specifically targeted autodialed and prerecorded calls because it considered such calls to be "a greater nuisance and invasion of privacy than calls placed by 'live' persons." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed

Exhibit "J"

Rulemaking and Memorandum Opinion and Order, 17 FCC Rcd 17459, 17474

(¶ 24) (2002) (citing S. Rep. 102-178 at 2 (1991)). And Congress was particularly

concerned about unwanted autodialed or prerecorded calls for which the called

party is forced to incur the costs of transmission, such as calls to cellular

telephones.[1] *See ACA Order*, 23 FCC Rcd at 562 (¶ 7).

As noted above, the TCPA does not bar calls for which the caller has

obtained the recipient's consent. The TCPA does not specify what methods may be

used to obtain or demonstrate the "prior express consent of the called party," 47

U.S.C. § 227(b)(1)(A). *See GroupMe Ruling*, 29 FCC Rcd at 3444 (¶¶ 7-8); *Rules*

*and Regulations Implementing the Telephone Consumer Protection Act of 1991*,

Report and Order, 27 FCC Rcd 1830, 1838 (¶ 20) (2012) (*2012 Rulemaking*

*Order*). To take into account "the consumer protection policies and goals

underlying the TCPA," the Commission has established different consent criteria

for different types of calls. *GroupMe Ruling*, 29 FCC Rcd at 3444 (¶ 8). For

---

[1] Section 227(b)(1)(A) applies to all calls to cellular phones, and more generally to situations where "the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A). A different provision of the TCPA, 47 U.S.C. § 227(b)(1)(B), similarly prohibits calls using an artificial or prerecorded voice to a "residential telephone line"—again except for emergency purposes or with the express consent of the called party—but authorizes the Commission to create exemptions to that prohibition. Pursuant to that authority, the Commission has granted an exemption for debt collection calls to residences. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12400 (¶ 17) (1995).

Exhibit "J"

example, given the widespread problem of intrusive and unwanted telemarketing

calls, the Commission requires telemarketers making autodialed or prerecorded

calls to obtain prior consent in written form. *2012 Rulemaking Order*, 27 FCC Rcd

at 1838-40 (¶¶ 20-26). *See* 47 C.F.R. § 64.1200(a)(2)-(3). For other types of calls

that do not present the same risk of abuse, oral consent may suffice. *2012*

*Rulemaking Order*, 27 FCC Rcd at 1841 (¶ 28). The Commission has also

permitted consent in appropriate circumstances "to be obtained and conveyed via

intermediaries," *GroupMe Ruling*, 29 FCC Rcd at 3445 (¶ 9), or conferred by the

called party's prior provision of his or her telephone number to the calling party,

*see Rules and Regulations Implementing the Telephone Consumer Protection Act*

*of 1991*, Report and Order, 7 FCC Rcd 8752, 8769 (1992) (¶ 30) (*1991 Rulemaking*

*Order*).

   An individual's consent, once obtained, is "not unlimited." *Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991*,

SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling, 27

FCC Rcd 15391, 15397 (¶11) (2012).[2] The Commission has specified that "the

scope of the consent" is based upon "the facts of each situation." *GroupMe Ruling*,

_____

[2] The burden to establish consent lies with the calling party. *Richard Gilmore d/b/a*
*Democratic Dialing*, Citation and Order Prerecorded Message Violations, 28 FCC
Rcd 1831, 1834 (¶ 7) (2013). *See ACA Order*, 23 FCC Rcd at 565 (¶10).

4

29 FCC Rcd at 3446 (¶ 11). The Commission has determined, for example, that "[c]onsumers who provide a wireless phone number for a limited purpose"—for service calls only, for example—"do not necessarily expect to receive telemarketing calls that go beyond the limited purpose," and thus have not given their consent to receive telemarketing calls. *2012 Rulemaking Order*, 27 FCC Rcd at 1840 (¶ 25).

    **2.** ***ACA Order.*** In 2005, an association of debt collection companies petitioned the Commission for a declaratory ruling that the TCPA and the Commission's implementing rules do not prohibit creditors and debt collectors from making autodialed or prerecorded calls to cellular telephone numbers for purposes of debt collection. *ACA Order*, 23 FCC Rcd at 563 (¶ 8). The Commission granted the petition in part and denied it in part. *Id.* at 568 (¶ 17). The Commission held that a person provides express consent to receive autodialed or prerecorded debt collection calls by providing his or her cellular telephone number "to a creditor in connection with an existing debt." *Id.* at 559 (¶ 1). The Commission further determined that such consent applies to calls made both by the creditor and by a "third party collector [acting] on behalf of that creditor." *Id.* at 565 (¶ 10). The Commission "emphasize[d]," however, that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer

Exhibit "J"

to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id.*

    3. **Factual Background.**  In September 2008, Petitioner-Appellant Albert Nigro contacted Niagara Mohawk/National Grid (National Grid) by telephone to request the discontinuance of electric service in the apartment of his recently deceased mother-in-law, Joan Thomas. District Court Order at 2 (A-233). During that call, Nigro provided National Grid with his personal cellular telephone number. *Id.*

    Approximately a year and a half later, Mercantile Adjustment Bureau, LLC (MAB), which had been hired by National Grid to collect an outstanding balance of $67 due on Thomas's account, began calling Nigro's cellular telephone using an automated dialing system. District Court Order at 2 (A-233). Each message was the same, and stated:

> Message is for Joan Thomas. If you are not Joan Thomas, please disconnect this call. By continuing to listen to this message you acknowledge that you are Joan Thomas. This is (unintelligible) at Mercantile Adjustment Bureau. Please contact me about an important personal business matter at 800-466-5059. This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

*Id.* MAB transmitted this message to Nigro's cell phone 72 times over a nine month period. *Id.*

Exhibit "J"

In December 2010, Nigro filed a complaint against MAB in federal district court, alleging that MAB had violated the TCPA by transmitting autodialed and prerecorded messages to his cellular telephone without his consent. *Id.* at 1 (A-232).

In an order dated March 11, 2013, the district court granted summary judgment to MAB and dismissed the complaint. *Id.* at 9 (A-240). The court held that Nigro's knowing release of his cellular telephone number to National Grid was express consent to being called at that number. *Id.* at 6-7 (A-237-38). According to the court, when providing his telephone number in connection with the account's termination, Nigro was aware "that there might be a surplus or debt on Thomas' account that would need to be addressed as part of the termination process." *Id.* at 9 (A-240). The district court thus held that Nigro "consented to calls regarding the subject of the transaction, namely the termination of Thomas' account." *Id.*

This appeal followed.

7

## ARGUMENT

### MAB VIOLATED THE TCPA BY MAKING DEBT COLLECTION CALLS TO NIGRO'S CELLULAR TELEPHONE WITHOUT OBTAINING HIS PRIOR CONSENT TO RECEIVE SUCH CALLS.

Under the TCPA and the FCC's implementing regulations, Nigro's provision of his cell phone number to National Grid does not qualify as consent to receive autodialed or prerecorded debt collection calls to that number.

1.  In the *ACA Order*, the Commission held that an individual's provision of his or her cellular telephone number conveys express consent to receive autodialed or prerecorded calls by creditors or third party debt collectors only if the telephone number was supplied "in connection with an existing debt." *ACA Order*, 23 FCC Rcd at 559, 563 (¶¶ 1, 9). Such consent qualifies "only if": (1) the cellular number "was provided by the consumer to the creditor," and (2) the cellular "number was provided during the transaction that resulted in the debt owed." *Id.* at 564-65 (¶ 10).

In this case, "the transaction that resulted in the debt owed," *id.* at 564-65 (¶ 10), was Thomas's purchase of electric service from National Grid. Nigro did not give National Grid his cellular telephone number in the transaction in which Thomas made or arranged for that purchase. Instead, Nigro provided his telephone number to National Grid *after* Thomas had incurred that debt, and indeed after

8

Thomas had passed away. Moreover, the later transaction in which Nigro sought

the discontinuance of Thomas' electric service is not the transaction that "resulted

in the debt owed"—Thomas's request for electric service. No debt was incurred by

Nigro's request to have service *discontinued* at Thomas's residence. Indeed,

MAB's messages appear to reflect MAB's own recognition that the debt was

Thomas's alone: They specifically instructed persons to "disconnect this call" if

they were not "Joan Thomas." District Court Order at 2 (A-233). Nigro's voluntary

provision of his cellular telephone number to National Grid for the "limited

purpose" of service termination did not convey his consent to receive calls "that go

beyond th[at] limited purpose." *2012 Rulemaking Order*, 27 FCC Rcd at 1840

(¶ 25).[3] *See* Nigro Reply Br. at 8.

      2.    In finding that Nigro had consented to MAB's debt collection calls,

the district court relied upon the Commission's statement in the *1991 Rulemaking*

*Order* that "persons who knowingly release their phone numbers have in effect

given their invitation or permission to be called at the number which they have

---

[3] Because Nigro did not supply his cellular telephone number during "the
transaction that resulted in the debt owed," *ACA Order*, 23 FCC Rcd at 564-65
(¶ 10), his provision of that number to National Grid did not convey consent under
the standard set forth in the *ACA Order*. Thus, there is no need for the Court to
address Nigro's separate argument (Nigro Reply Br. at 7) that this case does not
involve the provision of a cellular number "by the consumer to the creditor." *ACA
Order*, 23 FCC Rcd at 564-65 (¶ 10).

Exhibit "J"

given, absent instructions to the contrary." District Court Order at 6, 8 (A-237, A-239). *See* 7 FCC Rcd at 8769 (¶ 30). *See also* MAB Br. at 7, 10, 11, 14, 15. That analysis is incorrect. Although Nigro presumably consented to receive calls regarding the termination of service to the Thomas residence by providing his cell phone number to National Grid in connection with his request to terminate that service, under the *ACA Order* that consent did not extend to debt collection calls with respect to debts that did not arise "during the transaction" in which Nigro provided his number. 23 FCC Rcd at 564-65 (¶ 10).

3.      The provision of a telephone number is not the only method of conveying prior express consent to receive debt collection calls. An individual may, for example, provide such consent by means of a written or oral communication. *See 2012 Rulemaking Order*, 27 FCC Rcd at 1841 (¶ 28). There is no evidence, however, of any such written or oral communication here.

Nor is there any evidence that Nigro was acting as the representative of Thomas's estate in his dealings with National Grid or otherwise had responsibility for Nigro's debt. *See* Nigro Dep. at 20 (A-80) (Thomas "didn't have a will and she did not have an administrator of an estate"); *see also* Nigro Aff. at 1 (A-52) ( "Ms. Thomas died without a will, and therefore, there was no official executor or administrator of her estate."). The Commission takes no position on whether there

would have been consent had National Grid been furnished with the telephone number of the administrator or other formal representative of a decedent's estate regarding a previously incurred, but currently pending, bill against the estate.

* * * * *

In sum, Nigro did not supply his cellular telephone number in the course of "the transaction that resulted in the debt owed," *ACA Order*, 23 FCC Rcd at 564-65 (¶ 10), and thus under the standard the FCC set forth in the *ACA Order*, the mere fact that Nigro provided his number to National Grid did not convey his consent to be called regarding that debt. Nor is there any other evidence showing that Nigro had consented to the debt collection calls at issue in this case. Thus, MAB's calls violated the TCPA.

## CONCLUSION

The Court should reverse the district court's ruling that Nigro consented to MAB's debt collection calls by furnishing his cellular telephone number to National Grid.

Respectfully submitted,

/s/ Jonathan B. Sallet

Jonathan B. Sallet
General Counsel

11

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

| | | |
|---|---|---|
| Albert A. Nigro, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 13-1362 |
| | ) | |
| Mercantile Adjustment Bureau, LLC | ) | |
| Defendant-Appellee. | ) | |
| . | ) | |

## CERTIFICATE OF SERVICE

I, Laurel R. Bergold, hereby certify that on June 30, 2014, I electronically filed the foregoing Amicus Curiae Letter Brief for the Federal Communications Commission with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Kenneth R. Hiller, Esq.
Seth J. Andrews, Esq.
Law Offices of Kenneth Hiller
Suite 1A
6000 North Bailey Avenue
Amherst, NY 14226
*Counsel for:  Albert A. Nigro*

David Israel, Esq.
Michael Del Valle, Esq.
Justin Holmes
Bryan Christopher Shartle, Esq.
Sessions, Fishman, Nathan & Israel
Suite 200
3850 North Causeway Boulevard
Lakeway 2
Metairie, LA 70002
*Counsel for: Mercantile Adjustment Bureau, LLC*

/s/ Laurel R. Bergold